**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| KEYBANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No.: |
| STALLION AVIATION LLC; TVPX AIRCRAFT | ) | |
| SOLUTIONS INC., not in its individual capacity, | ) | |
| but solely as Owner Trustee under the TVPX 2022 | ) | |
| GV MSN 5265 Business Trust; and MOSHE | ) | |
| SILBER, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT**

KeyBank National Association ("KeyBank" or "Plaintiff"), by and through its attorneys, Thompson Hine LLP, as and for its verified complaint ("Complaint") against Defendants Stallion Aviation LLC ("Borrower" or "Stallion"), TVPX Aircraft Solutions Inc., not in its individual capacity, but solely as Owner Trustee under the TVPX 2022 GV MSN 5265 Business Trust ("TVPX"), and Moshe Silber ("Guarantor" or "Silber" and together with Borrower and TVPX, the "Defendants") alleges as follows:

**NATURE OF THE ACTION**

1.    This action is brought to (a) recover all sums due and owing by Borrower and guaranteed by Guarantor to KeyBank resulting from Borrower's breach of the Loan Documents (defined herein); and (b) to obtain an award of permanent possession of the Aircraft (defined herein) and Aircraft Documents (defined herein) pledged to KeyBank to secure Borrower's obligations under the Security Agreement (defined herein) and pursuant to (i) the *Convention on International Interests in Mobile Equipment* (the "Cape Town Convention") and the *Protocol to*

*the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment* (the "Cape Town Protocol," and, along with the Cape Town Convention, collectively known as the "Cape Town Treaty," which treaty was ratified in the United States on October 28, 2004, and went into effect for the United States on March 1, 2006); (ii) the Uniform Commercial Code ("UCC"); and (iii) New York law.

2.      Borrower is the holder of a leasehold interest in the Aircraft, with legal title held by TVPX. Subject to an Aircraft Operating Sublease Agreement between the 2022 GV MSN 2565 Statutory Trust and Borrower, the 2022 GV MSN 2565 Statutory Trust granted Borrower an exclusive lease to possess, use, lease, and operate the Aircraft. The Aircraft's current value exceeds $20 million.

3.      Borrower is successor in interest to Stallion Aviation III LLC ("Stallion III") pursuant a certain Loan Modification (defined herein). In December 2021, prior to the Loan Modification, KeyBank issued a Loan (defined herein) to Stallion III to finance the 5298 Aircraft (defined herein) and Stallion III executed a Note (defined herein) in favor of KeyBank for the principal amount of $23,500,000.00. Guarantor guaranteed Stallion III's obligations under the Note and related Loan Documents. To further secure Stallion III's obligations under the Loan Agreement (defined herein), the Original Owner (defined herein) executed a Security Agreement in favor of KeyBank, granting KeyBank a security interest in its right, title, and interest in the Collateral (as defined in the Security Agreement), including its right, title, and interest in the 5298 Aircraft.

4.      In October 2023, the Loan Modification was executed, amending the Loan Documents. As discussed in more detail herein, pursuant to the Loan Modification, (i) Borrower assumed the obligations of Stallion III; (ii) TVPX replaced the Original Owner; and (iii) the 5298

2

Aircraft and its engines was replaced with the Aircraft as, among other things, Collateral for the Loan. The amendments and modifications set forth in the Loan Modification became effective as to all of the Loan Documents.

5.    Borrower's failure to observe certain covenants required in the Loan Agreement triggered an Event of Default (as defined in the Loan Documents) and acceleration of the Indebtedness due. Despite demand from KeyBank, Borrower and Guarantor failed to pay the Indebtedness (defined herein).

6.    As a result of Borrower and Guarantor's failure to pay the Indebtedness, formal demand was also made on TVPX to promptly surrender to KeyBank the Aircraft pursuant to the terms of the Security Agreement, Cape Town Treaty, UCC, and New York law.

7.    TVPX is unwilling or unable to perform its obligation to surrender the Aircraft and/or Borrower impedes TVPX's ability to surrender the Aircraft in direct violation of the Loan Documents and under the law.

8.    KeyBank is entitled to immediate possession of the Aircraft under the Security Agreement and related Loan Documents, the Cape Town Treaty, UCC, and New York law. Accordingly, KeyBank seeks, among other things, an order of immediate permanent possession of the Aircraft, and a declaration that it is entitled to immediate possession of the Aircraft.

9.    KeyBank also seeks monetary damages for (1) Borrower's breach of the Loan Agreement for the outstanding amounts due under its Loan in the amount of $19,646,391.89, exclusive of further accruing interest, fees, and costs; (2) Guarantor's breach of the Guaranty for the outstanding amounts due under Borrower's Loan in the amount of $19,646,391.89, exclusive of further interest, fees, and costs; and (3) reasonable out of pocket costs, charges, and expenses,

including reasonable legal fees and disbursements incurred by KeyBank as a result of TVPX's failure to surrender title to the Aircraft.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.    Additionally, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. KeyBank pursues claims pursuant to the Cape Town Treaty, an international treaty intended to standardize the law governing, among other things, transactions and remedies for lenders involving movable property. The United States Senate ratified the Cape Town Treaty on October 28, 2004, and the Cape Town Treaty went into effect for the United States on March 1, 2006. The Loan Documents confirm that KeyBank is entitled to the maximum benefit of the rights and remedies contained within the Cape Town Treaty. Because KeyBank's claim for possession and control of the Aircraft arises under the Cape Town Treaty, an international treaty in effect in the United States, the Cape Town Treaty provides the basis for federal question jurisdiction in this matter and, accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over KeyBank's other claims pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over the parties and venue in this district is proper under 28 U.S.C. § 1391 pursuant to the Loan Documents, whereby KeyBank and Defendants submitted to the jurisdiction of any federal court sitting in New York County and agreed that any legal proceeding relating to the Loan Documents may be brought in such federal court. Furthermore, the parties waived any objection to this venue.

13.    This Court also has personal jurisdiction over the parties pursuant to Article 42 and 43 of the Cape Town Convention.

## THE PARTIES

14.    KeyBank is a national bank and member of the Federal Reserve System with its main office located in Cleveland, Ohio.  KeyBank provides equipment leasing and financing services to businesses throughout the United States.

15.    Borrower is a limited liability company organized and existing under the laws of the State of Delaware and having its chief executive offices located 100 Franklin Square Dr., Suite 401, Somerset, NJ 08873-4174. Upon information and belief, Borrower's sole member is Defendant Moshe Silber.

16.    TVPX is a corporation existing and organized under the laws of the State of Utah and, upon information and belief, has a principal place of business in North Salt Lake, Utah.

17.    Silber is an individual who, upon information and belief, resides at 25 Hidden Valley Drive, Suffern, NY 10901 and is a citizen of New York. Silber was, at all relevant times, a principal, owner, member, director, and/or officer of Borrower.

## FACTUAL ALLEGATIONS

**The Loan Documents**

*a.    The "Original" Loan Documents*

18.    On or around December 29, 2021, Stallion III executed a certain *Aircraft Loan Agreement* (the "Loan Agreement," as amended, restated, supplemented or modified by the Loan Modification) whereby KeyBank extended a term loan (the "Loan" with the last four digits -9521) to Stallion III for the purpose of financing that certain Gulfstream Aerospace model GV-SP (G550)

(the "5298 Aircraft"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A** and incorporated by reference.

19.     Under the terms of the Loan Agreement, and to induce KeyBank to issue the Loan, Stallion agreed to certain covenants in favor of KeyBank.

20.     The Loan was evidenced by a certain *Promissory Note* dated December 29, 2021, executed by Borrower in favor of KeyBank in the principal amount of $23,500,000.00 (the "Note," as amended, restated, supplemented or modified by the Loan Modification). A true and correct copy of the Note is attached hereto as **Exhibit B** and incorporated by reference.

21.     The Note was executed pursuant to, and is secured by, the Collateral pledged under that certain *Aircraft Security Agreement* (the "Security Agreement," as amended, restated, supplemented or modified by the Loan Modification) dated December 29, 2021, by and between KeyBank, in its capacity as the "Secured Party," and TVPX Aircraft Solutions Inc., not in its individual capacity, but solely as Owner Trustee under the 2021 GV MSN 5298 Statutory Trust (the "Original Owner"), in its capacity as "Grantor." A true and correct copy of the Security Agreement is attached hereto as **Exhibit C** and incorporated by reference.

22.     Specifically, the Security Agreement provides that:

> Grantor, in consideration of the premises and other good and valuable consideration, receipt whereof is hereby acknowledged, and in order to secure the payment of the principal of and interest on the Loan according to its tenor and effect, and to secure the payment of all other indebtedness under the Loan Documents and the performance and observance of all covenants, agreements and conditions contained in the Loan Documents (collectively referred to as the "Obligations"), does hereby convey, warrant, mortgage, assign, pledge, and grant a security interest to the Secured Party, its successors and assigns, in all and singular of the Grantor's right, title and interest in and to the properties, rights, interests and privileges described below and all proceeds thereof (all of which properties, rights, interests and privileges hereby mortgaged, assigned, pledged and granted or intended so to be, together with all proceeds thereof, are hereinafter collectively referred to as the "Collateral") and agrees that the foregoing grant creates in favor

of the Secured Party an International Interest in the Aircraft (including the Airframe and each Engine)[.]

*Security Agreement* at § 1.1.

23.    Moreover, pursuant to the Security Agreement, KeyBank was also granted a security interest in:

> (a) all of the Grantor's rights, title and interests in the Equipment (including the Airframe, any Propeller, the Engines, and the Parts) and substitutions and replacements of any of the foregoing; (b) any and all service and warranty rights related to the Equipment, including the Engines, and claims under any thereof; (c) all proceeds of any or all of the foregoing, whenever acquired, including the proceeds of any insurance maintained with respect to any of the foregoing and all proceeds payable or received with respect to any condemnation, expropriation, requisition or other Event of Loss, or the proceeds of any warranty; (d) the Purchase Agreement, if any, and any bill of sale pursuant to which Grantor received title to the Aircraft, together with all rights, powers, privileges, options and other benefits of the Grantor under the Purchase Agreement and such bill of sale; (e) any and all present and future leases, subleases, management agreements, interchange agreements, charter agreements, purchase agreements and any other present and future agreements of any kind whatsoever relating to the Equipment or any part thereof, including any International Interest (and associated rights) therein or related thereto in favor of Grantor (but not any obligations, liabilities and/or duties of any kind whatsoever of Grantor or any other party, person or entity of any kind whatsoever in connection therewith or related thereto); provided, however, that the foregoing assignment and grant of a security interest and lien in this subclause (e) shall not be deemed in any way whatsoever as an agreement by the Secured Party to permit or allow the Grantor (or any party, person or entity of any kind whatsoever) to enter into any such leases, subleases, management agreements, interchange agreements, charter agreements, purchase agreements and any other present and future agreements of any kind whatsoever, and the Grantor (or any party, person or entity of any kind whatsoever) shall only be allowed to enter into any of the foregoing in accordance with the terms of this Agreement. Grantor consents to the registration of the forgoing assignment of any International Interest (and associated rights) with the International Registry; and (f) any and all present and future records, logs and other materials required by the FAA (and any other governmental authority having jurisdiction) to be maintained in respect of each item of Equipment including, without limitation, the tapes, disks, diskettes and other data and software storage media and devices, file cabinets or containers in or on which the foregoing are stored, including any rights of Grantor with respect to the foregoing maintained with or by any other person.

*Id.*

24.    To further induce KeyBank to issue the Loan, Guarantor delivered to KeyBank his *Personal Guaranty* (the "<u>Guaranty</u>" as amended, restated, supplemented or modified by the Loan Modification) which absolutely guaranteed prompt payment and performance of all obligations of Stallion III under the Loan Documents. A true and correct copy of the Guaranty is attached hereto as **Exhibit D** and incorporated by reference.

> **b.    *The Loan Modification***

25.    On October 17, 2023, KeyBank, Stallion III, Original Owner, Borrower and TVPX executed that certain *Assignment and Assumption Agreement and Modification of Loan Documents* (the "<u>Loan Modification</u>").  A true and correct copy of the Loan Modification is attached hereto as **Exhibit E** and incorporated by reference.

26.    Pursuant to the Loan Modification:

a.    Stallion III assigned to Borrower "all of its right, title, interest, benefits, burdens and obligations in, to and under the Loan Documents and the Assumed Obligations" (as defined in the Loan Modification).

b.    Borrower accepted the assignment and further conveyed that, "[Borrower] represents, warrants, acknowledges and agrees that [Borrower] has received and reviewed executed copies of each of the Loan Documents from [Stallion III], and [Borrower] acknowledges that it is not relying on Lender to provide copies of the Loan Documents. [Borrower] accepts, assumes and agrees to pay and perform (i) all of the Obligations in, to and under the Loan Documents and (ii) all other Obligations of the "Borrower" that hereafter arise pursuant to the Loan Documents." *Loan Modification* at § 2(b).

27.    Additionally, pursuant to the Loan Modification, the following amendments to the Loan Documents included:

    a.    All refences in the Loan Documents to "Borrower" shall be deemed to mean Stallion;

    b.    All refences in the Loan Documents to "Grantor" shall be deemed to mean TVPX; and

    c.    All refences in the Loan Documents to the "[5298] Aircraft" shall be deemed to mean the Aircraft (as defined herein).

28.    Lastly, the Loan Modification specifically expressed that any refences of the "Loan Agreement," the "Note," and the "Security Agreement," was to refer to each of those original documents as amended by the Loan Modification. *See Loan Modification* at § 3(f).

29.    Guarantor acknowledged the Loan Modification and reaffirmed his Guaranty as it pertained to the modifications and amendments to the Loan Documents. *See Guarantor Acknowledgement and Reaffirmation of Guaranty* attached to the Loan Modification.

30.    Concurrently with the Loan Modification, on October 17, 2023, the Original Owner, TVPX, and KeyBank executed that certain *FAA Assignment and Assumption Agreement and Amendment* (the "FAA Assignment") whereby the parties amended certain terms of the Security Agreement regarding the replacement and, in connection therewith, to release of the 5298 Aircraft and its engines from the liens of the original Security Agreement. A true and correct copy of the FAA Assignment is attached hereto as **Exhibit F** and incorporated by reference.

31.    Specifically, pursuant to the FAA Assignment, the Original Owner "assign[ed] to [TVPX], and [TVPX] hereby assume[d] and accept[ed] from [the Original Owner], all of the right,

title, interest, benefits, burdens and obligations of "Grantor" in, to and under the Security

Agreement and all associated rights relating thereto." *FAA Assignment* at § 2.

32.     Regarding the replacement of the Collateral as a result of the Loan Modification,

and specifically the replacement of the 5298 Aircraft and its engines with the Aircraft (defined in

the FAA Assignment as the "Replacement Aircraft"), the FAA Assignment provides:

> [TVPX] hereby grants, pledges and assigns to Lender a first priority (subject
> to existing liens in favor of Lender) security interest, collateral assignment,
> international interest, prospective international interest, security assignment
> and prospective security assignment, in, against, under and with respect to
> all of [TVPX's] right, title and interest in, to and under all of the Collateral
> (as defined in the Security Agreement), including without limitation the
> Replacement Aircraft. For avoidance of doubt: (a) the Replacement
> Airframe is hereby included in the definition of "Airframe" under the
> Security Agreement, including Section 1.1 thereto, and on Schedule 1
> thereto, and made subject to the security interest granted under Section 1.1
> of the Security Agreement; and (b) the Replacement Engines are hereby
> included in the definition of "Engines" under the Security Agreement,
> including Section 1.1 thereto, and on Schedule 1 thereto, and made subject
> to the security interest granted under Section 1.1 of the Security Agreement.

*FAA Assignment* at § 3.

33.     Thus, under the Loan Modification, to secure the Indebtedness and Borrower's

obligations  under the Loan Documents, TVPX granted to KeyBank a security interest in (i) one

Gulfstream Aerospace model GV-SP G550 aircraft bearing manufacture's serial number 5265 and

U.S. Registration Number N247EM (the "Airframe"); (ii) two (2) Rolls Royce BR700-710C4-11

engines bearing manufacturer's serial numbers 15643 and 15642 (the "Engines"); (iii) all

appliances, parts, instruments, appurtenances, accessories and other equipment or property

installed thereon or therein (the "Parts" and together with the Airframe and Engines, the

"Aircraft"); (iv)  all proceeds, profits, replacements, and accessions of the foregoing; and (v) any

and all logs, manuals and data, inspection and maintenance records, other materials required by

the FAA, or any other governmental authority having jurisdiction, to be maintained with respect

to the Aircraft, and all other records with respect to the Aircraft (the "Aircraft Documents") (all of the foregoing, as more fully described in the Security Agreement, the "Collateral").

34.    The FAA Assignment further noted that the registrations under the International Registry for the 5298 Aircraft and its engines had been released and discharged. *See FAA Assignment* at § 5(b); *see also* **Exhibit G**.[1]

35.    KeyBank's interest in the Collateral is further perfected under the Uniform Commercial Code by virtue of UCC-1 financing statements filed with the Utah Secretary of State against TVPX and the Delaware Secretary of State against Stallion.

36.    Consequently, KeyBank holds a first-priority and properly perfected security interest in the Collateral, including the Aircraft, proceeds thereto, and the Aircraft Documents.

37.    Pursuant to those certain *Consent to Aircraft Lease and Assignments* (each a "Consent Agreement" and collectively, the "Consents") dated October 17, 2023, KeyBank consented to the following lease transactions: (1) TVPX entering into the Lease (as defined in each Consent Agreement) and, pursuant thereto, the 2022 GV MSN 5265 Statutory Trust leasing the Aircraft; (2) the 2022 GV MSN 5265 Statutory Trust entering into the Lease and, pursuant thereto, Borrower leasing the Aircraft; and (3) Borrower entering into the Lease and, pursuant thereto, Rhodium Asset Management LLC leasing the Aircraft. True and correct copies of the Consents are attached hereto as **Exhibit H** and incorporated by reference.

38.    Pursuant to the Consents, upon an Event of Default under the Loan Agreement, KeyBank has the right at its sole election to exercise any and all of its remedies including, among other things, to terminate the Lease and demand possession of the Aircraft. *Consents* at § 5.

---

[1] A true and correct copy of the International Registry discharge record for the 5298 Airframe and its engines are attached hereto as Exhibit G and incorporated by reference.

39.    Moreover, parties to their respective Consent Agreement agreed to "cooperate with [KeyBank's] exercise of any such rights, powers and remedies, including the return of the Aircraft to [KeyBank] upon [KeyBank's] demand." *Id*.

40.    Additionally, the 2022 GV MSN 5265 Statutory Trust, Borrower, and Rhodium Asset Management LLC, each as Lessee (as defined in each Consent Agreement) under their respective Consent Agreement, acquiesced, among other things, that their rights with respect to the Aircraft are "subject and subordinate in all respects to Lender's rights and interests in the Aircraft, including, all of its rights and remedies under the [Consent Agreement] and any related agreements." *Consents* at § 2(b).

41.    Pursuant to the Consents, the 2022 GV MSN 5265 Statutory Trust, Borrower, and Rhodium Asset Management LLC, each as Lessees under their respective Consents, further acknowledged and agreed that "(i) it does not have, and it hereby disclaims, any present or future right, title or interest (other than Lessee's leasehold interest, as and to the extent provided in the Lease, and as subordinated hereby) in or to the Aircraft, or any engine, auxiliary power unit, or any part thereof, and it will keep all of the same free and clear of liens attributable to Lessee, and (ii) any upgrades, modifications, additions, parts, engines, auxiliary power units, avionics, and other equipment, property or software, attached or added to, incorporated into, or otherwise made a part of the Aircraft by Lessee or any service provider or vendor pursuant to the Lease, shall become subject to Lender's security interest granted pursuant to the Agreement, free and clear of liens for which Lessee is responsible." *Consents* at § 2(f).

42.    The Loan Agreement, Loan Modification, Note, Security Agreement, Guaranty, UCC-1 financing statements and Consents shall collectively be referred to as the "Loan Documents."

**The Aircraft**

43.     According the to the Recitals in the Consent dated October 17, 2023, by and among Borrower, KeyBank, TVPX, and the 2022 GV MSN 5265 Statutory Trust, under the terms of a certain *Aircraft Operating Lease* by and between TVPX, in its capacity as "Owner" of the Aircraft, and the 2022 GV MSN 5265 Statutory Trust, in its capacity as "Lessee" of the Aircraft, the 2022 GV MSN 5265 Statutory Trust granted and leased to Borrower "an exclusive lease to possess, use, lease, and operate" the Aircraft.

44.     The Aircraft's primary hangar location is located at 485 Industrial Ave., Teterboro, NJ 07608 (the "Primary Hangar Location").

45.     Upon information and belief, the Aircraft is currently located at the Denver Centennial Airport in Englewood, Colorado (7565 South Peoria St., Unit D9, Englewood, CO 80112).

46.     In accordance with FAR Part 47[2] as promulgated and enforced by the Federal Aviation Administration ("FAA") and the terms of the Loan Documents, the Airframe is registered in the name of TVPX and is assigned a nationally designated N-number (N247EM). A true and correct copy of the FAA registration is attached hereto as **Exhibit I** and incorporated by reference.

47.     In accordance with the Cape Town Treaty, KeyBank's interest in the Aircraft was perfected by virtue of the registrations of the Airframe and Engines with the International Registry of Mobile Assets on April 15, 2022. True and correct copies of the International Registry records for the Airframe and Engines are attached hereto as **Exhibit J** and **Exhibit K**, respectively, and are incorporated by reference.

**The Default**

---

[2] 14 C.F.R. §§ 47.1 – 47.71 (2024).

48.     Borrower defaulted under the Loan Agreement when it failed to, after 10-days' notice, observe specified covenants set forth in Sections 2.9, 2.11, and 2.14 of the Loan Agreement.

49.     Specifically, by letter dated February 9, 2024, KeyBank delivered to Borrower and TVPX a certain *Notice of Default and Reservation of Rights* (the "Notice"). A true and correct copy of the Notice is attached hereto as **Exhibit L** and incorporated by reference.

50.     As explained in the Notice, KeyBank informed Borrower that it failed to provide flight logs, a hangar agreement with the applicable airport, and evidence that Guarantor meets the minimum Unencumbered Liquidity covenant set forth in EXHIBIT A to the Loan Agreement.

51.     Under the terms of the Loan Agreement, Borrower's failure to cure the default withing a 10-day time period from the date of the Notice will trigger an Event of Default under the Loan Agreement.

52.     Borrower has refused to observe the covenants set forth in Sections 2.9, 2.11, and 2.14 of the Loan Agreement.

53.     As a result, on March 26, 2024, KeyBank delivered to Borrower and TVPX a certain *Notice of Default, Acceleration, and Imposition of Default Rate of Interest; Demand for Payment* (the "Borrower Demand Letter"). A true and correct copy of the Borrower Demand Letter is attached hereto as **Exhibit M** and incorporated by reference.

54.     As explained in the Borrower Demand Letter, the total indebtedness as of March 26, 2024, was $19,646,574.89 (together, with interest as it accrues under the Note, fees, expenses, and all other charges due under the Loan Documents, the "Indebtedness"), which included the principal, accrued interest, and termination fees.

55.     Borrower has refused to pay the Indebtedness.

56.     On March 26, 2024, KeyBank delivered to Guarantor that certain *Notice of Default, Acceleration, and Imposition of Default Rate of Interest; Demand for Payment* (the "Guarantor Demand Letter"), notifying Guarantor of Borrower's default and demanding payment in full of the amount of the Indebtedness. A true and correct copy of the Guarantor Demand Letter is attached hereto as **Exhibit N** and incorporated by reference.

57.     Guarantor has not paid the Indebtedness.

58.     Additionally, on March 26, 2024, in response to Borrower and Guarantor's unwillingness or inability to pay the Indebtedness, KeyBank delivered to TVPX that certain *Notice of Default, Demand for Possession of Aircraft and Surrender of Title* (the "TVPX Demand Letter"), which notified TVPX of KeyBank's immediate demand for possession of the Aircraft as a result of Borrower's default under the Loan Documents. A true and correct copy of the TVPX Demand Letter is attached hereto as **Exhibit O** and incorporated by reference.

59.     As stated in the TVPX Demand Letter, KeyBank also notified TVPX of its immediate termination of the Aircraft Operating Lease pursuant to Section 5 of the Consent Agreement[3] and all leases and sublease stemming therefrom.

60.     As of the date of this Complaint, TVPX has not surrender the Aircraft.

61.     TVPX's failure to surrender the Aircraft to KeyBank violates KeyBank's right to immediate possession under the terms of the Loan Documents and applicable law, as well as TVPX's duty to assemble and make the Aircraft available upon KeyBank's demand.

62.     In addition to the demand for permanent possession, pursuant to Section 5.2 of the Security Agreement, KeyBank is also entitled to "all reasonable out of pocket costs, charges and expenses, including reasonable legal fees and disbursements, incurred by Secured Party by reason

---

[3] Specific reference here is made to the Consent to Aircraft Lease and Assignment, dated October 17, 2023, by and among Stallion, KeyBank, TVPX, and the 2022 GV MSN 5265 Statutory Trust, attached hereto a part of Exhibit H.

of the occurrence of any Event of Default or in enforcing Secured Party's rights under the [Security] Agreement, before or in connection with litigation and for any deficiency in the disposition of the Aircraft." *Security Agreement* at § 5.2.

**The Cape Town Treaty**

63.    The Cape Town Treaty is an international treaty intended to standardize, among other things, transactions involving movable property. It provides for the constitution and effects of an international interest in certain categories of mobile equipment including airframes, aircraft engines, and helicopters. *See Cape Town Convention*, Article 2(3)(a).

64.    The Aircraft, including the Engines therein and described above,[4] constitute an object over which the Cape Town Treaty applies.

65.    Additionally, the Cape Town Treaty applies where both (a) pursuant to a security agreement, a security interest is granted in the airframe and aircraft engines, and (b) the debtor (the chargor under a security agreement) is "situated in" a country that has ratified the Cape Town Treaty at the time the applicable security agreement was executed. *See Cape Town Convention*, Articles 2, 3 and 4.

66.    An international interest in mobile equipment is an interest "granted by the chargor under a security agreement." *Cape Town Convention*, Article 2(2)(a).

67.    The term "security agreement" means "an agreement by which a chargor grants or agrees to grant to a chargee an interest (including an ownership interest) in or over an object to secure the performance of any existing or future obligation of the chargor or a third person." *Cape Town Convention*, Artticle 1(ii).

---

[4] The Cape Town Treaty applies to aircraft engines that have at least 1750 pounds of thrust or turbine or piston powered aircraft engines that have at least 550 rated takeoff shaft horsepower. *See Cape Town Protocol*, Article I(2)(b)(i). The Engines here satisfy such size requirement.

16

68.      As of March 1, 2006, the Cape Town Treaty went into effect in the United States.

69.      The Security Agreement, executed in 2021, creates an "international interest" in the Aircraft within the meaning of the Cape Town Convention, whereby KeyBank is considered the "creditor" or "chargee" and TVPX is the "debtor" or "chargor" under the Security Agreement.[5]

70.      Moreover, pursuant to Article 3(1) of the Cape Town Convention, because TVPX was situated in the United States when the Security Agreement was executed (such execution being after the Cape Town Treaty first came into effect in the United States), the Security Agreement created the international interests in the Aircraft.

71.      Thus, and as contemplated in the Loan Documents, the Cape Town Treaty applies to the Security Agreement. As "international interests" and "aircraft objects" governed by the Cape Town Treaty, the enforcement action under the Security Agreement is governed by the Cape Town Treaty.

72.      Furthermore, because the United States has implemented the Cape Town Treaty, pursuant to Article VIII of the Cape Town Protocol, choice of law is based on where the parties to the agreement contracted to. Under the Security Agreement, KeyBank and TVPX agree that New York law governs.

73.      Under the Cape Town Treaty, KeyBank is entitled to possession, control and custody of the Aircraft upon a showing of default by TVPX under the Security Agreement. Specifically, Article 8 of the Cape Town Convention provides, "In the event of default as provided in Article 11, the chargee may, to the extent that the chargor has at any time so agreed and subject to any declaration that may be made by a Contracting State under Article 54, exercise any one or more of the following remedies: (a) take possession or control of any object charged to it; (b) sell

---

[5] *See Cape Town Convention*, Articles 1(i) (definition of "creditor"), (j) (definition of "debtor") and (o) (definition of "international interest"), and 2(2)(a) (applicability to security agreement).

or grant a lease of any such object; (c) collect or receive any income or profits arising from the management or use of any such object. The chargee may alternatively apply for a court order authorising [sic] or directing any of the acts referred to in the preceding paragraph." *Cape Town Convention*, Article 8(1-2).

74.    As defined in the Security Agreement, the term "Event of Default" means "any default or event of default (however defined) in the other Loan Documents." Security Agreement, § 5.1.

75.    Section 5.3 of the Security Agreement further provides:

> Each and every right, power and remedy herein specifically given to the Secured Party or otherwise in this Agreement or the other Loan Documents are cumulative and are in addition to every other right, power and remedy herein or therein specifically given or now or hereafter existing at law, including upon an Event of Default any applicable remedies specified under the Cape Town Treaty available to Secured Party, in equity or by statute, and each and every right, power and remedy whether specifically herein or therein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Secured Party, and the exercise or the beginning of the exercise of any power or remedy will not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy.

*Security Agreement* at § 5.3.

76.    Under Article 13 of the Cape Town Convention, a creditor that "adduces evidence of default by the debtor" is entitled to obtain from a court "speedy relief" in the form of various remedies, including "preservation of the object and its value; possession, control or custody of the object; [and] immobilisation [sic] of the object." *Cape Town Convention*, Article 13(1). Importantly, a party is entitled to this relief under Article 13 of the Cape Town Convention "pending final determination of its claim." *Id.*

## **FIRST CLAIM**

### (Breach of Contract as to Borrower - Loan Documents)

18

77.    KeyBank repeats and realleges the preceding paragraphs as if fully set forth herein.

78.    The Loan Documents are valid, binding, and enforceable contracts between KeyBank and Borrower.

79.    KeyBank has fully performed its obligations under the terms of the Loan Agreement and relevant Loan Documents, including financing the purchase of the Aircraft for Borrower's benefit.

80.    Borrower failed to observe certain covenants set forth in Sections 2.9, 2.11, and 2.14 of the Loan Agreement.

81.    Section 5.1(c) of the Loan Agreement provides that an Event of Default shall occur if the "Borrower fails to perform or observe any other covenant, condition or agreement required to be performed or observed by it hereunder or under any agreement, document or certificate related hereto, and such failure continues for ten (10) days after written notice thereof from Lender to Borrower[.]"

82.    Pursuant to Section 5.2 of the Loan Agreement and Section 7 of the Note, as a consequence of the Events of Default, KeyBank has declared the Note to be immediately due and payable.

83.    Borrower has not paid the amounts due and owing under the Note which, as of March 26, 2024 is $19,646,574.89, consisting of $18,947,391.27 in unpaid principal; $36,024.93 in accrued interest, $663,158.69 in termination fees; and such other out-of-pocket costs, fees, and expenses incurred or to be incurred by KeyBank in connection with enforcement of its rights.

84.    As a direct and proximate result of Borrower's breaches of the Loan Agreement, KeyBank has suffered, and will continue to suffer, damages in an amount to be determined at trial,

but not less than $19,646,574.89, and such further interest, expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## SECOND CLAIM

### (Breach of Guaranty as to Guarantor)

85.     KeyBank repeats and realleges the preceding paragraphs as if fully set forth herein.

86.     The Guaranty is a valid, binding, and enforceable contract between and among KeyBank and Guarantor.

87.     Pursuant to the Guaranty, the Guarantor agreed to pay and satisfy, upon a default by the Borrower, any and all obligations of the Borrower under the Loan Documents.

88.     The Borrower is in default under the Loan Documents.

89.     KeyBank has demanded that the Guarantor pay the amounts now due and owing under the Loan Documents.

90.     The Guarantor has not repaid the Indebtedness.

91.     Consequently, the Guaranty has been breached.

92.     As a direct and proximate result of Guarantor's breach of the Guaranty, KeyBank has suffered, and will continue to suffer, damages in an amount to be determined at trial, but not less than $19,646,574.89, and such further interest, expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## THIRD CLAIM

### (Order of Possession under the Cape Town Treaty)

93.     KeyBank repeats and realleges the preceding paragraphs as if fully set forth herein.

94.     The Security Agreement is enforceable in accordance with its terms against Borrower and TVPX because value has been given, TVPX had the power to transfer rights in the

Airframe and Engines, and TVPX has authenticated a security agreement that provides a description of the Airframe and Engines.

95.    The Security Agreement creates an international interest under the terms of the Cape Town Treaty.

96.    The Cape Town Convention designates that under Article 13, a creditor is entitled to an order granting immediate (i) possession, control or custody of an aircraft and aircraft engine; (ii) preservation of the aircraft and aircraft engine's value; and/or (iii) immobilization of the aircraft—pending a final determination by the court of its claim—upon a showing of a default under the Security Agreement.

97.    An Event of Default under the Security Agreement occurred as a result of Borrower's default under the Loan Documents.

98.    Accordingly, KeyBank is entitled to an immediate order of possession of the Aircraft pursuant to Article 8(1)(a) and Article 13 of the Cape Town Convention.

## FOURTH CLAIM

### (Order of Possession and Replevin, New York law)

99.    KeyBank repeats and realleges the preceding paragraphs as if fully set forth herein.

100.    The Security Agreement is enforceable in accordance with its terms against Borrower and TVPX because value has been given, TVPX had the power to transfer rights in the Collateral, and TVPX has authenticated a security agreement that provides a description of the Collateral.

101.    KeyBank has a perfected security interest in the Collateral evidenced by the filing of the UCC-1 financing statements.

102.    Pursuant to Section 5.2 of the Security Agreement, upon the occurrence of a default under the Loan Documents, without notice, KeyBank may, among other things, "take immediate possession of and remove" its Collateral and dispose of the Collateral at a public or private auction.

103.    An Event of Default under the Security Agreement occurred as a result of Borrower's default under the Loan Documents.

104.    As the current holder of a properly perfected first-priority security interest in the Collateral, KeyBank has an immediate right of permanent possession of the Collateral pursuant to the Security Agreement and New York Uniform Commercial Code § 9-609 and is entitled to sell the Collateral in a commercially reasonable manner.

105.    KeyBank has demanded possession of the Collateral, but TVPX has refused to deliver possession thereof to KeyBank despite its agreement to do so and KeyBank's lawful entitlement to possession.

106.    The Collateral has been intentionally and wrongfully detained by TVPX, Borrower, or one of their contractors, lessees, or invitees.

107.    The property subject to replevin is (i) one Gulfstream Aerospace model GV-SP G550 aircraft bearing manufacture's serial number 5265 and U.S. Registration Number N247EM; (ii) two (2) Rolls Royce BR700-710C4-11 engines bearing manufacturer's serial numbers 15643 and 15642; (iii) all appliances, parts, instruments, appurtenances, accessories and other equipment or property installed thereon or therein; and (iv) the Aircraft Documents.

108.    By reason of the foregoing, KeyBank is entitled to an order granting it possession of its Collateral and compelling TVPX to deliver the Collateral to a place to be designated by KeyBank.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants as follows:

a)      On its First Claim, for judgment against Borrower and in favor of KeyBank for breach of the Note and related Loan Documents in the total amount of $19,646,574.89 as of as of March 26, 2024, consisting of $18,947,391.27 in unpaid principal; $36,024.93 in accrued interest, $663,158.69 in termination fees; out-of-pocket costs, fees, and expenses incurred or to be incurred by KeyBank in connection with enforcement of its rights; and such further interest, expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

b)      On its Second Claim, for judgment against Guarantor and in favor of KeyBank for breach of the Guaranty and related Loan Documents in the total amount of $19,646,574.89 as of as of March 26, 2024, consisting of $18,947,391.27 in unpaid principal; $36,024.93 in accrued interest, $663,158.69 in termination fees; out-of-pocket costs, fees, and expenses incurred or to be incurred by KeyBank in connection with enforcement of its rights; and such further interest, expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

c)      On its Third Claim, for an Order of permanent possession of the Aircraft under the Cape Town Treaty;

d)      On its Fourth Claim, for an Order of permanent possession of the Collateral;

e)      For KeyBank's court costs; and

f)      Any and all other relief the Court deems just, equitable and proper

Dated:  April 5, 2024.                    Respectfully submitted,

                              */s/* Curtis L. Tuggle
                              Curtis L. Tuggle
                              Emily J. Mathieu
                              Jonathan S. Hawkins
                              **THOMPSON HINE LLP**
                              300 Madison Avenue, 27th Floor
                              New York, New York 10017-4611
                              T: 212-344-5680 / F: 212-344-6101
                              Curtis.Tuggle@Thompsonhine.com
                              Emily.Mathieu@Thompsonhine.com
                              Jonathan.Hawkins@Thompsonhine.com

                              *Counsel for KeyBank National Association*

## VERIFICATION

I, Alberto Sanchez, as authorized signatory on behalf of KeyBank National Association, declare under penalty of perjury that I have read the forgoing Verified Complaint, and that the facts alleged therein are true and correct to the best of my personal knowledge.

Dated: April 5, 2024.

KeyBank National Association

By: _Alberto Sanchez_
Alberto Sanchez
Vice President, Asset Recovery
Group
*KeyBank National Association*
